## I. (a) PLAINTIFFS

United Transportation Union, et al.

**DEFENDANTS**

Union Pacific Railroad Company

**(b)** County of Residence of First Listed Plaintiff  Cuyahoga County, OH
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Hildebrand, McLeod & Nelson, Inc.
350 Frank H. Ogawa Plaza, 4th Floor
Oakland, CA  94612
510-451-67321

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- [ ] 1  U.S. Government Plaintiff
- [ ] 2  U.S. Government Defendant
- [x] 3  Federal Question (U.S. Government Not a Party)
- [ ] 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

**CONTRACT**
- [ ] 110 Insurance
- [ ] 120 Marine
- [ ] 130 Miller Act
- [ ] 140 Negotiable Instrument
- [ ] 150 Recovery of Overpayment & Enforcement of Judgment
- [ ] 151 Medicare Act
- [ ] 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- [ ] 153 Recovery of Overpayment of Veteran's Benefits
- [ ] 160 Stockholders' Suits
- [ ] 190 Other Contract
- [ ] 195 Contract Product Liability
- [ ] 196 Franchise

**REAL PROPERTY**
- [ ] 210 Land Condemnation
- [ ] 220 Foreclosure
- [ ] 230 Rent Lease & Ejectment
- [ ] 240 Torts to Land
- [ ] 245 Tort Product Liability
- [ ] 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- [ ] 310 Airplane
- [ ] 315 Airplane Product Liability
- [ ] 320 Assault, Libel & Slander
- [ ] 330 Federal Employers' Liability
- [ ] 340 Marine
- [ ] 345 Marine Product Liability
- [ ] 350 Motor Vehicle
- [ ] 355 Motor Vehicle Product Liability
- [ ] 360 Other Personal Injury

PERSONAL INJURY
- [ ] 362 Personal Injury— Med. Malpractice
- [ ] 365 Personal Injury — Product Liability
- [ ] 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- [ ] 370 Other Fraud
- [ ] 371 Truth in Lending
- [ ] 380 Other Personal Property Damage
- [ ] 385 Property Damage Product Liability

**CIVIL RIGHTS**
- [ ] 441 Voting
- [ ] 442 Employment
- [ ] 443 Housing/ Accommodations
- [ ] 444 Welfare
- [ ] 445 Amer. w/Disabilities - Employment
- [ ] 446 Amer. w/Disabilities - Other
- [ ] 440 Other Civil Rights

**PRISONER PETITIONS**
- [ ] 510 Motions to Vacate Sentence
  Habeas Corpus:
- [ ] 530 General
- [ ] 535 Death Penalty
- [ ] 540 Mandamus & Other
- [ ] 550 Civil Rights
- [ ] 555 Prison Condition

**FORFEITURE/PENALTY**
- [ ] 610 Agriculture
- [ ] 620 Other Food & Drug
- [ ] 625 Drug Related Seizure of Property 21 USC 881
- [ ] 630 Liquor Laws
- [ ] 640 R.R. & Truck
- [ ] 650 Airline Regs.
- [ ] 660 Occupational Safety/Health
- [ ] 690 Other

**LABOR**
- [ ] 710 Fair Labor Standards Act
- [ ] 720 Labor/Mgmt. Relations
- [ ] 730 Labor/Mgmt. Reporting & Disclosure Act
- [ ] 740 Railway Labor Act
- [x] 790 Other Labor Litigation
- [ ] 791 Empl. Ret. Inc. Security Act

**IMMIGRATION**
- [ ] 462 Naturalization Application
- [ ] 463 Habeas Corpus – Alien Detainee
- [ ] 465 Other Immigration Actions

**BANKRUPTCY**
- [ ] 422 Appeal 28 USC 158
- [ ] 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- [ ] 820 Copyrights
- [ ] 830 Patent
- [ ] 840 Trademark

**SOCIAL SECURITY**
- [ ] 861 HIA (1395ff)
- [ ] 862 Black Lung (923)
- [ ] 863 DIWC/DIWW (405(g))
- [ ] 864 SSID Title XVI
- [ ] 865 RSI (405(g))

**FEDERAL TAX SUITS**
- [ ] 870 Taxes (U.S. Plaintiff or Defendant)
- [ ] 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- [ ] 400 State Reapportionment
- [ ] 410 Antitrust
- [ ] 430 Banks and Banking
- [ ] 450 Commerce
- [ ] 460 Deportation
- [ ] 470 Racketeer Influenced and Corrupt Organizations
- [ ] 480 Consumer Credit
- [ ] 490 Cable/Sat TV
- [ ] 810 Selective Service
- [ ] 850 Securities/Commodities/ Exchange
- [ ] 875 Customer Challenge 12 USC 3410
- [ ] 890 Other Statutory Actions
- [ ] 891 Agricultural Acts
- [ ] 892 Economic Stabilization Act
- [ ] 893 Environmental Matters
- [ ] 894 Energy Allocation Act
- [ ] 895 Freedom of Information Act
- [ ] 900 Appeal of Fee Determination Under Equal Access to Justice
- [ ] 950 Constitutionality of State Statutes

## V. ORIGIN (Place an "X" in One Box Only)

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from another district (specify)
- [ ] 6 Multidistrict Litigation
- [ ] 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
Railway Labor Act ("RLA"), 45 U.S.C. Section 153 First(p)

Brief description of cause:
Petition to Enforce Public Law Board and National Railroad Adjustment Board Awards

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ Enforcement of Board Award & Attys fees & costs.

CHECK YES only if demanded in complaint:
JURY DEMAND:  [ ] Yes  [x] No

## VIII. RELATED CASE(S) IF ANY

PLEASE REFER TO CIVIL L.R. 3-12 CONCERNING REQUIREMENT TO FILE "NOTICE OF RELATED CASE".

## IX. DIVISIONAL ASSIGNMENT (CIVIL L.R. 3-2)
(PLACE AND "X" IN ONE BOX ONLY)

[x] SAN FRANCISCO/OAKLAND   [ ] SAN JOSE

DATE
31 July 2008

SIGNATURE OF ATTORNEY OF RECORD
*Frederick L. Nelson*

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

## Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.    (a) Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) Attorneys. Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.    Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

**III.    Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.    Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V.    Origin.** Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

**VI.    Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.**           Example:           U.S. Civil Statute: <u>47 USC 553</u>
                                                                                                                                  Brief Description: <u>Unauthorized reception of cable service</u>

**VII.    Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.    Related Cases.** This section of the JS 44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

Clear Form

# UNITED STATES DISTRICT COURT

for the

## NORTHERN DISTRICT OF CALIFORNIA

UNITED TRANSPORTATION UNION, NICK        )
BJAZEVICH, R.A. BRUCKER, M.A.            )
CERVANTEZ, B.W. HUMBLE, B.L. HENRY,      )
M.S. REDMOND, K.L. SUMMERS               )
        Plaintiff                )
        v.                       )     Civil Action No.
UNION PACIFIC RAILROAD COMPANY           )
                       )
                       )
        Defendant                )

**Summons in a Civil Action**

To: UNION PACIFIC RAILROAD COMPANY

       *(Defendant's name)*

A lawsuit has been filed against you.

     Within ___ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney, whose name and address are:

If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

                            Richard W. Wieking
                            Name of clerk of court

Date: _____

                            Deputy clerk's signature

*(Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States allowed 60 days by Rule 12(a)(3).)*

**Proof of Service**

I declare under penalty of perjury that I served the summons and complaint in this case on _____,
by:

    (1) personally delivering a copy of each to the individual at this place, _____ ; or

    (2) leaving a copy of each at the individual's dwelling or usual place of abode with _____
       who resides there and is of suitable age and discretion; or

    (3) delivering a copy of each to an agent authorized by appointment or by law to receive it whose name is
       _____ ; or

    (4) returning the summons unexecuted to the court clerk on _____.

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____.

Date: _____

_____
                        Server's signature

_____
                     Printed name and title

_____
                       Server's address

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

UNITED TRANSPORTATION UNION )
14600 Detroit Avenue )
Cleveland, OH 44108 )
 )
NICK BJAZEVICH )
650 West 10th St, #3 )
San Pedro, CA 90731 )
 )    CASE NO.: _____
R.A. BRUCKER )
5212 Ojai Drive )
Bakersfield, CA 93306 )
 )
M.A. CERVANTEZ )    __PETITION TO ENFORCE__
9235 Almo Street )    __PUBLIC LAW BOARD AND__
Pico Rivera, CA 90660 )    __NATIONAL RAILROAD__
 )    __ADJUSTMENT BOARD__
B.W. HUMBLE )    __AWARDS__
125 Star Spirits )
Santa Teresa, NM 88008 )
 )
B.L. HENRY )
29934 Orchid Cove Drive )
Canyon Country, CA 91351 )
 )
M.S. REDMOND )
9556 Gilford Ave. )
Whittier, CA 90605 )
 )
K.L. SUMMERS )
418 Lumberton Drive )
Bakersfield, CA 93312 )
 )
 Petitioners, )
 )
vs )
 )
UNION PACIFIC RAILROAD COMPANY )
1400 Douglas Street )
Omaha, NE 68179 )
 Respondent.

1.      This is a petition to enforce Awards No. 90, 91, 93 and 106 of Public Law

Board No. 6778, issued in April and July 2008, and Awards No. 26613, 26631, 26634 of

the National Railroad Adjustment Board, First Division ("NRAB"), issued in April and

May 2008, pursuant to Section 3 First and Second of the Railway Labor Act ("RLA"),

respectively. 45 U.S.C. § 153 First and Second.  Each Award came about as the result of

a claim on behalf of Union Pacific Railroad employees after their dismissal or

suspension.  True and correct copies of the Awards are attached hereto.

2.      Section 153 First(p) of the Railway Labor Act ("RLA"), 45 U.S.C. § 153

First(p), empowers federal district courts to make such orders or to enter other judgments

as may be appropriate to enforce awards and orders of Public Law Boards and the

NRAB.

3.      Venue properly resides in this Court under the provisions of 45 U.S.C. §

153 First(p) and Second, which permits the grievant, or any person for whose benefit an

order of a Board is made, to seek compliance in a district court in which the petitioner

resides, or in which the principal operating office of the carrier is located, or through

which the carrier operates.  The carrier operates through this District.

4.      The United Transportation Union ("UTU") is the duly authorized

representative for the purposes of the RLA of the craft or class of train service employees

at Union Pacific Railroad ("UP").  The UTU is headquartered at 14600 Detroit Avenue,

Cleveland, Ohio 44107.

5.      Nick Bjazevich was, at all relevant times, an employee of UP and resides

at 650 W. 10th St, #3, San Pedro, CA 90731.

6.      R.A. Brucker was, at all relevant times, an employee of UP and resides at 5212 Ojai Drive, Bakersfield, CA 93306.

7.      M.A. Cervantez was, at all relevant times, an employee of UP and resides at 9235 Almo Street, Pico Rivera, CA 90660.

8.      B.L. Henry was, at all relevant times, an employee of UP and resides at 29934 Orchid Cove Drive, Canyon Country, CA 91351.

9.      B.W. Humble was, at all relevant times, an employee of UP and resides at 125 Star Spirits Santa Teresa, NM 88008.

10.     M.S. Redmond was, at all relevant times, an employee of UP and resides at 9556 Gilford Ave., Whittier, CA 90605.

11.     K.L. Summers was, at all relevant times, an employee of UP and resides at 418 Lumberton Drive, Bakersfield, CA 93312.

12.     UP is a corporation engaged in interstate transportation by rail and is a "carrier" as defined by the RLA, 45 U.S.C. § 151 First.  UP has its principal operating office at 1400 Douglas Street, Omaha, NE 68179.

13.     UP operates rail transportation in the San Francisco Bay area, which is within the District in which the Court sits.

## CLAIM FOR RELIEF

14.     The facts surrounding the Petitioners' claims are explained in detail in the "Opinion of the Board" or "Findings" in each of the Awards.

15.     In sum, disputes arose between the parties, which resulted in the claimants being discharged or suspended from UP employment.

3

16.     Each claimant filed a claim seeking, *inter alia*, reinstatement and pay for all time lost. UTU progressed said claim, which was the subject of each Award. Each claim was progressed through the usual channels prescribed by the applicable collective-bargaining agreement.

17.     Upon failure of the parties to reach an agreement, the disputes were referred to either the Public Law Board No. 6778 (as provided by Section 3 Second of the RLA, 45 U.S.C. § 153 Second), or the National Railroad Adjustment Board (as provided by Section 3 First of the RLA, 45 U.S.C. § 153 First).

18.     Each Award sustained the respective Petitioner's claim for reinstatement and back pay.

19.     UP has failed to comply with said Awards by failing to pay Petitioners the proper amount of back pay from the date of the improper dismissal or suspension to reinstatement.

20.     Section 3 First(p) and Second of the RLA, 45 U.S.C. § 153 First(p) and Second, provides that the Findings and Order of the Public Law Board and National Railroad Adjustment Board are conclusive on the parties and are enforceable by this Court when the carrier fails to comply.

**WHEREFORE,** Petitioners respectfully request this Court grant the following relief:

A.     Issue injunctive relief requiring UP, its officers, and employees to fully comply with Awards No. 90, 91, 93 and 106 of Public Law Board No. 6778 issued in April and July of 2008, and Awards No. 26613, 26631, 26634 of the National Railroad Adjustment Board, First Division, issued in April and May of 2008.

4

B.     Make whole the Claimants, Nick Bjazevich, R.A. Brucker, M.A.

Cervantez, B.L. Henry, B.W. Humble, M.S. Redmond, and K.L. Summers for any loss

suffered including, but not limited to reinstatement and all back pay.

C.     Award attorneys' fees and costs to the UTU in accordance with 45 U.S.C.

§ 153 First(p) and Second; and,

D.     Grant Petitioners such other and further relief, which this Court deems just

and proper.


                                    Respectfully submitted,


                                    Kevin Brodar
                                    Associate General Counsel
                                    United Transportation Union
                                    14600 Detroit Avenue
                                    Cleveland, Ohio 44107
                                    Tel: (216) 228-9400
                                    Fax: (216) 228-0937



                                    Frederick L. Nelson
                                    350 Frank H. Ogawa Plaza, 4th Fl.
                                    Oakland, CA 94612
                                    Tel: (510) 451-6732
                                    Fax: (510) 465-7023


                                         5

Award No. 90
Case No.   90

## PUBLIC LAW BOARD NO. 6778

PARTIES)       Union Pacific Railroad Company
  TO   )
DISPUTE)       United Transportation Union  (UP Western Lines)

**COMPANY FILE:**   **146629 D**
**UTU File No.**        **07031 RV**

**STATEMENT OF CLAIM:**

> Request of R. A. Brucker, Los Angeles Service Unit, for removal of a Level 4C discipline assessment from his personal record and for replacement of his loss of wages and vacation credits resulting from his 120-day suspension from February 12, 2007, through and including June 11, 2007, and one day's pay for attending the investigation held on February 22, 2007.

**OPINION OF BOARD:**

Claimant R. A. Brucker established seniority with the Carrier on October 5, 1998. On February 11, 2007, claimant went on duty at 7:30 AM for CMJMJ-07 to complete the work the original crew was unable to finish. The other crewmembers were conductor K. L. Summers and engineer Barlow.  Part of the assignment was performing work at Milepost 382.5 on the Lone Pine Subdivision in TWC territory. Upon completion of the work at the Industry, conductor Summers lined and locked the derail and reported on his Conductor Log and to the Train Dispatcher that he lined and locked the main line switch for main track movement.  Engineer Barlow initialed the Conductor's Log, indicating agreement that the conductor had lined and locked the main line switch for main track movement.

On February 12, 2007, Carrier's Manager of Track Maintenance (MTM) JM Madriaga was hyrailing in the area with his Track Inspector when they discovered the mainline switch at approximately Milepost 382.5, Lone Pine Subdivision unlocked and in position for other than main track movement (open position). The Carrier determined that no other crew had been in the area after Claimants were there February 11, 2007. As a result the claimant was notified to attend an investigation in which he was charged with allegedly failing to ensure that his Conductor returned the switch for main line movement after reporting clear of main line in Track Warrant Control territory in violation of several operating rules. Following the investigation, the claimant was notified that the charges against him were sustained and that he was assessed a LEVEL 4C in accordance with the UP UPGRADE progressive discipline table. The LEVEL 4C required a 120-day suspension that began on February 12, 2007.

The Organization at the outset argued that the Carrier violated the time limit provisions during the appeal process. On March 23, 2007 UTU General Chairman JK Klein mailed a letter appealing the discipline for the claimant to the Carrier highest designated officer to handle such claims, Labor Relations Assistant Director JL Reilly. On June 29, 2007, General Chairman Klein wrote Assistant Director Reilly stating that as of that date the Organization had not received a response from the Carrier regarding the UTU's appeal dated March 23, 2007. Mr. Reilly wrote Chairman Klein July 10, 2007 stating that he wrote and mailed a response to General Chairman

Klein May 22, 2007 and enclosed a copy of the response.

The Organization stated that these facts showed that the Carrier failed to respond within 60 days of the postmark of the appeal letter as required by Article VII - Appeals, Section B of the November 16, 2006 Discipline Agreement between the Organization and the Carrier.   Article VII, Section B,provides:

> Should the UTU General Chairperson file an appeal, the designated Labor Relations officer will respond to the appeal within sixty (60) days from the postmarked date of the appeal. If the Labor Relations officer fails to respond within sixty (60) days, the employee will be paid for any time lost and the employee's record will be cleared of the discipline at issue.

The Organization stated that the above language was clear and unambiguous. They further noted that Article VIII - Miscellaneous, Section A, of the November 16, 2006 Discipline Agreement provides the agreed upon method of verifying the date of an appeal or a response to the appeal:

> ARTICLE VIII - MISCELLANEOUS
>
> A.   If a dispute arises concerning the timeliness of any notice or decision, the postmark on the envelope containing such document or the dated receipt of the on-property delivery of the Superintendent's decision to the employee shall be deemed to be the date of such notice or decision.

The Organization stated that the Carrier's assertion that their response dated May 22, 2007 was printed and mailed that day is not supported with documentation or

postmark. The Organization concluded that the Agreement is clear and therefore this claim should be sustained.

In the letter to Chairman Klein on July 10, 2007 Mr. Reilly stated that he mailed a response on May 22, 2007 and included documentation that the response had been scanned into Labor Relations FileNet system on May 23, 2007 establishing the documents existed prior to May 23. In its written submission the Carrier presented printouts of computer screens that established that Assistant Director Reilly disseminated copies of his May 22, 2007 response by email on May 22, 2007 at 12:31 PM and that he printed a copy of the response on May 22, 2007 at 12:16 PM. The Carrier agreed that had if it had violated the time limit in this case, the discipline should be overturned and Claimants paid for their time out of service.   The Carrier stated that it responded within the time limit provided in the agreement.and for whatever reason, the timely written and mailed response did not reach the Organization.

The Board agrees with the Organization in this case. The provisions of Article VIII make it clear that any dispute over the timeliness of a response will be decided by the postmark on the envelope. While the Board believes that Assistant Director Reilly may be honest and forthright, it is bound by the specific provisions of the agreement. The record contains no definitive proof that the Carrier's response was postmarked on March 22, 2007. Therefore, the

Award No. 90
Page 5

Board must find that the time limit provisions of Article VII B of the agreement have been violated and sustain the claim.

**Findings:**     Claim sustained.

*John R. Binau*
John R. Binau
Neutral Member

I dissent.

*J.L. Reilly*     4/22/08
J.L. Reilly
Carrier Member

*J. Kevin Klein*
J. Kevin Klein.
Organization Member

Award No.  91
Case No.    91

## PUBLIC LAW BOARD NO. 6778

PARTIES)    Union Pacific Railroad Company
  TO    )
DISPUTE)    United Transportation Union  (UP Western Lines)

**COMPANY FILE:**    **146630 D**
**UTU File No.**        **07033 RV**

**STATEMENT OF CLAIM:**

Request of Conductor K. L. Summers, Los Angeles Service Unit, for removal of a Level 4C discipline assessment from his personal record and for replacement of his loss of wages and vacation credits resulting from his 120-day suspension from February 12, 2007, through and including June 11, 2007, and one day's pay for attending the investigation held on February 22, 2007.

**OPINION OF BOARD:**

Claimant K.L. Summers established seniority with the Carrier on April 3, 2004. On February 11, 2007, claimant went on duty at 7:30 AM as conductor on CMJMJ-07 to complete the work the original crew was unable to finish. The other crewmembers were brakeman Brucker and engineer Barlow. Part of the assignment was performing work at Milepost 382.5 on the Lone Pine Subdivision in TWC territory. Upon completion of the work at the Industry, conductor Summers lined and locked the derail and reported on his Conductor Log and to the Train Dispatcher that he lined and locked the main line switch for main track movement. Engineer Barlow initialed the Conductor's Log, indicating agreement that the conductor had lined and locked the main line switch for main track movement.

On February 12, 2007, Carrier's Manager of Track Maintenance (MTM) JM Madriaga was hyrailing in the area with his Track Inspector when they discovered the mainline switch at approximately Milepost 382.5, Lone Pine Subdivision unlocked and in position for other than main track movement (open position). The Carrier determined that no other crew had been in the area after Claimants were there February 11, 2007. As a result the claimant was notified to attend an investigation in which he was charged with allegedly failing to ensure that he returned the switch for main line movement after reporting clear of main line in Track Warrant Control territory in violation of several operating rules. Following the investigation, the claimant was notified that the charges against him were sustained and that he was assessed a LEVEL 4C in accordance with the UP UPGRADE progressive discipline table. The LEVEL 4C required a 120-day suspension that began on February 12, 2007.

The Organization at the outset argued that the Carrier violated the time limit provisions during the appeal process. On March 23, 2007 UTU General Chairman JK Klein mailed a letter appealing the discipline for the claimant to the Carrier highest designated officer to handle such claims, Labor Relations Assistant Director JL Reilly. On June 29, 2007, General Chairman Klein wrote Assistant Director Reilly stating that as of that date the Organization had not received a response from the Carrier regarding the UTU's appeal dated March 23, 2007. Mr.Reilly wrote Chairman Klein July 10, 2007 stating that he wrote and mailed a response to General Chairman

Klein May 22, 2007 and enclosed a copy of the response.

The Organization stated that these facts showed that the Carrier failed to respond within 60 days of the postmark of the appeal letter as required by Article VII - Appeals, Section B of the November 16, 2006 Discipline Agreement between the Organization and the Carrier.  Article VII, Section B, provides:

> Should the UTU General Chairperson file an appeal, the designated Labor Relations officer will respond to the appeal within sixty (60) days from the postmarked date of the appeal. If the Labor Relations officer fails to respond within sixty (60) days, the employee will be paid for any time lost and the employee's record will be cleared of the discipline at issue.

The Organization stated that the above language was clear and unambiguous. They further noted that Article VIII - Miscellaneous, Section A, of the November 16, 2006 Discipline Agreement provides the agreed upon method of verifying the date of an appeal or a response to the appeal:

ARTICLE VIII - MISCELLANEOUS

A.  If a dispute arises concerning the timeliness of any notice or decision, the postmark on the envelope containing such document or the dated receipt of the on-property delivery of the Superintendent's decision to the employee shall be deemed to be the date of such notice or decision.

The Organization stated that the Carrier's assertion that their response dated May 22, 2007 was printed and mailed that day is not supported with documentation or

postmark. The Organization concluded that the Agreement is clear and therefore this claim should be sustained.

In the letter to Chairman Klein on July 10, 2007 Mr. Reilly stated that he mailed a response on May 22, 2007 and included documentation that the response had been scanned into Labor Relations FileNet system on May 23, 2007 establishing the documents existed prior to May 23. In its written submission the Carrier presented printouts of computer screens that established that Assistant Director Reilly disseminated copies of his May 22, 2007 response by email on May 22, 2007 at 12:31 PM and that he printed a copy of the response on May 22, 2007 at 12:16 PM. The Carrier agreed that had if it had violated the time limit in this case, the discipline should be overturned and Claimants paid for their time out of service.   The Carrier stated that it responded within the time limit provided in the agreement and for whatever reason, the timely written and mailed response did not reach the Organization.

The Board agrees with the Organization in this case. The provisions of Article VIII make it clear that the postmark on the envelope will decide any dispute over the timeliness of a response. While the Board believes that Assistant Director Reilly may be honest and forthright, it is bound by the specific provisions of the agreement. The record contains no definitive proof that the Carrier's response was postmarked on March 22, 2007. Therefore, the

Award No. 91
Page 5

Board must find that the time limit provisions of Article VII B of the

agreement have been violated and sustain the claim.

**Findings:**    Claim sustained.

John R. Binau
Neutral Member

I dissent.

J.L. Reilly
Carrier Member

4/22/08

J. Kevin Klein.
Organization Member

Award No.  93
Case No.    93


# PUBLIC LAW BOARD NO.  6778


PARTIES)     Union Pacific Railroad Company
   TO   )
DISPUTE)     United Transportation Union  (UP Western Lines)

**COMPANY FILE:  1466631 D**
**UTU File No.**       **07037 LA**

## STATEMENT OF CLAIM:

Request of Conductor **M. S. Redmond** , Los Angeles Service Unit, for removal of a Level 3 discipline assessment, reinstatement to service with seniority unimpaired, compensation for all time lost and restoration of vacation credits from February 23, 2007 until he was returned to service on September 17, 2007, and a day's pay for attending investigation on February 14, 2007. Claim includes payment for all wage equivalence to which Claimant is entitled, such as medical and dental benefits and for any monetary loss for such coverage while dismissed from service.

## OPINION OF BOARD:

Claimant  M.S. Redmond established seniority with the Carrier on September 12,

1990. On January 9, 2007the claimant was working as brakeman on train YDO36R-

09. at Carson, California. . At approximately 5:00 p.m., the claimant secured a brake

on his locomotive prior to going into the yard office. At this same time two Carrier

officers were performing FTX testing when they came upon two unattended

locomotives, UP 3111 and 3118.  Upon inspecting the locomotives, they discovered

the locomotives were not properly secured.  There were no handbrakes applied on UP

3111 at all.  It appeared to them that someone had attempted to tie one handbrake on

UP 3118, but had not properly done so. One of the officers was able to turn the wheel

on the handbrake of UP 3118 another one-and-one-half turns. Upon investigation they were able to establish Claimant was the last person to use the locomotives.

As a result the claimant was notified to attend an investigation in which he was charged with failure to secure the locomotive in violation of Rule 7.6 (Securing Cars or Engines). Following the investigation the Carrier determined that the evidence in the investigation established his responsibility for violating Rule 7.6 (Securing Cars and Engines), as charged. For this violation the claimant was assessed a Level 5 (permanent dismissal). Violations of GCOR Rule 7.6 normally require an assessment of Level 3 – Five-day suspension. However, Claimant's current discipline status was at Level 4.5 for an infraction occurring May 23, 2006. The new Level 3 coupled with the current Level 4.5 required Level 5 – Permanent Dismissal. The Carrier reinstated the claimant to service on September 4, 2007. Therefore, the instant claim is only for back pay for the 203 days out of service from February 14 through September 4, 2007.

The Organization at the outset argued that the Carrier violated the time limit provisions during the appeal process. On March 23, 2007 UTU General Chairman JK Klein mailed a letter appealing the discipline for the claimant to the Carrier highest designated officer to handle such claims, Labor Relations Assistant Director JL Reilly. On June 29, 2007, General Chairman Klein wrote Assistant Director Reilly stating that as of that date the Organization had not received a response from the

Award No. 93
Page 3

Carrier regarding the UTU's appeal dated March 23, 2007. Mr.Reilly wrote Chairman

Klein July 10, 2007 stating that he wrote and mailed a response to General Chairman

Klein May 22, 2007 and enclosed a copy of the response.

The Organization stated that these facts showed that the Carrier failed to

respond within 60 days of the postmark of the appeal letter as required by Article VII

- Appeals, Section B of the November 16, 2006 Discipline Agreement between the

Organization and the Carrier.   Article VII, Section B, provides:

> Should the UTU General Chairperson file an appeal, the designated
> Labor Relations officer will respond to the appeal within sixty (60)
> days from the postmarked date of the appeal. If the Labor Relations
> officer fails to respond within sixty (60) days, the employee will be
> paid for any time lost and the employee's record will be cleared of the
> discipline at issue.

The Organization stated that the above language was clear and unambiguous. They

further noted that Article VIII - Miscellaneous, Section A, of the November 16, 2006

Discipline Agreement provides the agreed upon method of verifying the date of an

appeal or a response to the appeal:

> ARTICLE VIII - MISCELLANEOUS
>
> A.   If a dispute arises concerning the timeliness of any notice or
> decision, the postmark on the envelope containing such document or
> the dated receipt of the on-property delivery of the Superintendent's
> decision to the employee shall be deemed to be the date of such notice
> or decision.

Award No. 93
Page 4

The Organization stated that the Carrier's assertion that their response dated May 22, 2007 was printed and mailed that day is not supported with documentation or postmark. The Organization concluded that the Agreement is clear and therefore this claim should be sustained.

In the letter to Chairman Klein on July 10, 2007 Mr. Reilly stated that he mailed a response on May 22, 2007 and included documentation that the response had been scanned into Labor Relations FileNet system on May 23, 2007 establishing the documents existed prior to May 23. In its written submission the Carrier presented printouts of computer screens that established that Assistant Director Reilly disseminated copies of his May 22, 2007 response by email on May 22, 2007 at 12:31 PM and that he printed a copy of the response on May 22, 2007 at 12:16 PM. The Carrier agreed that had if it had violated the time limit in this case, the discipline should be overturned and Claimants paid for their time out of service. The Carrier stated that it responded within the time limit provided in the agreement and for whatever reason, the timely written and mailed response did not reach the Organization.

The Board agrees with the Organization in this case. The provisions of Article VIII make it clear that the postmark on the envelope will decide any dispute over the timeliness of a response. While the Board believes that Assistant Director Reilly may be honest and forthright, it is bound by the

Award No. 93
Page 5

specific provisions of the agreement. The record contains no definitive proof

that the Carrier's response was postmarked on March 22, 2007. Therefore, the

Board must find that the time limit provisions of Article VII B of the

agreement have been violated and sustain the claim.

**Findings:**     Claim sustained.


_____
John R. Binau
Neutral Member


I dissent.

_____    4/22/08
J.L. Reilly
Carrier Member


_____
. Kevin Klein.
Organization Member

Award No.  106
Case No.    106

# PUBLIC LAW BOARD NO. 6778

PARTIES)      Union Pacific Railroad Company
  TO  )
DISPUTE)      United Transportation Union  (UP Western Lines)

**COMPANY FILE:**  **1475247 D**
**UTU File No.**      **07090 SW**

**STATEMENT OF CLAIM:**

"...the request of Conductor BW Humble, El Paso Service Unit, for removal of a Level 5 discipline assessment, reinstatement to service with seniority unimpaired, compensation for all time lost and restoration of vacation credits from May 29, 2007 until he is returned to service, and two day's pay for attending investigation on June 4 and 5, 2007. Claim includes payment for all wage equivalence to which Claimant is entitled, such as medical and dental benefits and for any monetary loss for such coverage while dismissed from service."

**OPINION OF BOARD:**

Claimant B. W. Humble established seniority with the Union Pacific Railroad Company on June 21, 2004. On May 29, 2007 between 11:00 and 11:15 Carrier's Senior Manager of Terminal Operations (SMTO) BA Huston made cell phone contact with the claimant to inform him he was being called in to submit to a follow-up Drug and Alcohol test. During this call the claimant informed the Mr. Huston that he was in between El Paso and Albuquerque headed for a mandatory court appearance. Before being able to notify the claimant of the time and place for the test, SMTO Huston lost contact with the claimant. SMTO Huston immediately called claimant's cell phone back and got his voicemail. Mr. Huston left the claimant a message

informing him to report to the Dallas Street Yard Office in El Paso at approximately 1300 hours to submit the Drug and Alcohol test. The claimant was unable to regain cell service until some time later. By the time the Claimant did regain his cell phone service the time for him to report was past.

The Carrier removed him from service for failure to appear for the drug and alcohol test and cited him to an investigation. Following the investigation the Carrier determined that the evidence demonstrated that the claimant refused to take a test for Drugs and Alcohol. For this violation the Carrier assessed Level 5 – Permanent Dismissal.

The Carrier stated that this is a simple case concerning an employee who failed to appear for a required follow-up Drug and Alcohol test. The Carrier stated that the evidence showed that the claimant was instructed to present himself for a follow-up Drug and Alcohol test and he failed to do so. They pointed out that at the Investigation, the claimant admitted to not reporting for the Drug and Alcohol test. The Carrier stated that such behavior constitutes refusal to test under Carrier's Drug and Alcohol Policy. Also under Carrier's Drug and Alcohol Policy, refusal to test constitutes insubordination. By authority of the Carrier's Discipline Policy, insubordination is a dismissible offense. The Carrier cited numerous awards that have upheld the Carrier's dismissing employees for failing to present themselves for follow-up Drug and Alcohol tests. Therefore, the Carrier concluded that the discipline assessed should not be overturned.

Award No. 106
Page 3

The Organization argued that this case is based on the determination of several factors. First, has the Carrier established under the Union Pacific Drug and Alcohol Policy that the Claimant was subject to follow up testing? The Organization argued that the Union Pacific's Policy states that for an employee to be subject to follow up testing they must have tested positive for drug or alcohol use while on duty. They stated that the Carrier failed to provide one shred of evidence that the Claimant was subject to post- positive or follow up drug and alcohol testing.

The Organization further argued that there are required forms that must be signed by an employee who is returned to work under the condition that they submit to follow up testing. This form specifically spells out what is expected of the employee and for how long the employee will be subject to follow up testing. The Organization noted that the claimant testified that he did not sign such document. They also pointed out that the Carrier failed to provide such document. The Organization concluded that a review of the transcript and all of the evidence entered by both parties makes it undeniably evident that the claimant was not subject to follow up testing under the Carrier's Policy.

The second factor that the Organization stated that must be considered, was it proper for the Carrier to expect an employee who does not know that he or she is subject to follow up testing to be available for testing? The Organization stated that there is no provision in the Union Pacific Drug and Alcohol Policy or in the General Code of Operating Rules that require that an employee who has not tested positive for

prohibited substances to be subject to follow up testing. Therefore, the Organization argued that it was improper to expect an employee that had no knowledge that he was subject to follow up testing to be available for that testing.

The Organization also argued that the claimant did not appear to take the test due to the fact that he was a considerable distance from El Paso headed to a court appearance. The Organization stated that the evidence showed that the Charging Officer called the claimant to tell the claimant to appear for a follow up drug and alcohol test and that the claimant informed the Charging Officer that he was in between El Paso and Albuquerque headed for a mandatory court appearance. Before the Charging Officer told the claimant when he had to appear the cell phone call was dropped and the claimant was unable to regain his service until some time later. By the time the claimant did regain his cell phone service the time for him to report was past and the Carrier had removed him from service for failure to appear for the drug and alcohol test. The Organization concluded that the Carrier made an egregious error in the instant case by dismissing the claimant and requested that the Board right this wrong and return the Claimant to service immediately with full back pay.

The Carrier stated that the Organization lacks authority to determine whether Claimant belonged in the follow-up program. They argued that authority rests solely with Employee Assistance. They stated that Employee Assistance determined that the claimant needed to be in follow-up and placed him on the least restrictive follow-up schedule.

The Carrier also questioned the claimant's excuse that he was in Albuquerque, New Mexico, at least two hours away to have a traffic ticket taken care of. They stated that the evidence of record indicated the traffic citation was dismissed and other evidence demonstrates that in order to have the ticket dismissed, Claimant had to present documentation prior to 4:00 PM the day before his scheduled court appearance. Therefore, the Carrier stated the record suggested that the claimant was in Albuquerque on May 28, 2007, not May 29, 2007 as he maintained..

The Board agrees that there are multiple issues present in this case. However, the main issue is whether the claimant was insubordinate for refusing to take a drug and alcohol test. The Board finds that for this issue the Carrier failed to meet its burden of proof in this case. There is no evidence in the record that proved that the claimant ever received timely instructions to report at a specific time for these tests. The testimony of the charging officer makes it clear that he was unsure of these instructions. He testified:

> "In regards to the conversation we initially had, I- I told him it was regarding a post positive follow up. Now as far as the time, I- I'm unsure of when that came up during the initial conversation. That's why I attempted to re-contact him and- and- and leave him a voice mail, as far as what specific time."

The claimant's testimony also made it clear that he was not given a specific time to take the test and that the charging officer understood that he was enroute to Albuquerque to take care of a traffic citation.

Award No. 106
Page 6

The Board also does not find the Carrier's argument that the claimant did not take care of this traffic ticket on May 29 convincing.  The brochure cited by the Carrier stated that one way a ticket **may be** dismissed is by producing evidence prior to the court date. This brochure does not state that this is the only way cases may be dismissed and no evidence points to any deception on the part of the claimant.  The record showed that the claimant was 24 times out and under local calling rules was under no obligation to take any phone calls from the Carrier. Under these circumstances the Board finds it difficult to believe the claimant would lie about his location or its purpose.

On March 12, 2007 this Board issued a bench decision returning the claimant to service. The claimant received a Return-to-Work assessment through EAP and was cleared to return to work with no follow-up testing required. As this award finds that the Carrier did not meet its burden of proof in this case, the claimant should also be paid for all time lost.

**Findings:**      Claim sustained.


John R. Binau
Neutral Member


C. Reilly                    July 16, 2008
Carrier Member

J. Kevin Klein.
Organization Member

Form 1        NATIONAL RAILROAD ADJUSTMENT BOARD
                           FIRST DIVISION

                                              Award No. 26613
                                              Docket No. 46637
                                              NRAB-00001-070058
                                              (07-1-58)

     The First Division consisted of the regular members and in addition Referee Robert Richter when award was rendered.

                              (United Transportation Union
PARTIES TO DISPUTE:  (
                              (Union Pacific Railroad Company

STATEMENT OF CLAIM:

> "A claim and grievance for Union Pacific Railroad employee N. Bjazevich, Los Angeles Service Unit, for removal of a Level 5 discipline assessment from his personal record, reinstatement to service with seniority unimpaired, compensation for all time lost and restoration of vacation credits due to his dismissal from service on June 23, 2006, until he is returned to service. Claim includes payment for all wage equivalence to which Claimant is entitled, such as medical and dental benefits and for any monetary loss for such coverage while dismissed from service. In addition, we seek two days' pay for attending the investigation begun May 31, 2006, and reconvened June 5, 2006."

FINDINGS:

     The First Division of the Adjustment Board, upon the whole record and all the evidence, finds that:

     The carrier or carriers and the employee or employees involved in this dispute are respectively carrier and employee within the meaning of the Railway Labor Act, as approved June 21, 1934.

     This Division of the Adjustment Board has jurisdiction over the dispute involved herein.

     Parties to said dispute were given due notice of hearing thereon.

Form 1
Page 2

Award No. 26613
Docket No. 46637
NRAB-00001-070058
(07-1-58)

On July 23, 2006 Carrier dismissed the Claimant from its service. As a result of an Investigation held on May 31 and June 6, 2006 the Carrier found:

> "While employed as Conductor on the 2INOLB-06, at City of Industry, California, near Milepost 501, Alhambra Subdivision, at approximately 1900 hours, on May 9, 2006. you were discourteous and had willful disregard or negligence affecting the interest of the company. This is found to be in violation of Rule 1.6 (Conduct), as contained in the General Code of Operating Rules, effective April 3, 2005."

At the Investigation the Carrier permitted the Claimant to be represented by an organization different than permitted under the Schedule Agreement. Carrier is cautioned that it must make sure its hearing officers comply with the Schedule Agreement.

As to the facts in this case, Claimant was working as Conductor on 2INOLB-06. As the crew was performing switching at City of Industry, California Claimant was approached by a Carrier officer regarding the Claimant's failure to wear ear plugs. At the time, because the movement was in process the Claimant was not attentive to the Officer. Finally the Officer called the engineer over the radio and stopped the movement.

After the movement was stopped various discussions occurred as well as with additional Carrier Officers. At no time did the Claimant curse at an Officer nor threaten physical harm. Claimant also feigned illness and as a result the Carrier's Officers removed him from duty. Some of the language used by one of the Carrier's Officers was less than professional.

While the record reveals there may have been some smoke, there was no fire. Certainly there was not enough discourteousness exhibited by the Claimant to warrant dismissal.

Accordingly, Claimant's discipline will be reduced to a Level 1 violation of the Carrier's Discipline Policy. Claimant will be reinstated with seniority unimpaired and pay for all time lost in excess of a Level 1 discipline.

Form 1
Page 3

Award No. 26613
Docket No. 46637
NRAB-00001-070058
(07-1-58)

## AWARD

Claim sustained in accordance with the Findings.

## ORDER

This Board, after consideration of the dispute identified above, hereby orders that an award favorable to the Claimant(s) be made.  The Carrier is ordered to make the Award effective on or before 30 days following the postmark date the Award is transmitted to the parties.

NATIONAL RAILROAD ADJUSTMENT BOARD
By Order of First Division

Dated at Chicago, Illinois, this 8th day of April 2008.

Form 1

# NATIONAL RAILROAD ADJUSTMENT BOARD
## FIRST DIVISION

Award No. 26631
Docket No. 46685
NRAB-00001-070122
(07-1-122)

The First Division consisted of the regular members and in addition Referee Robert Richter when award was rendered.

(United Transportation Union

**PARTIES TO DISPUTE:**    (

(Union Pacific Railroad Company

## STATEMENT OF CLAIM:

"A claim and grievance for Union Pacific Railroad employee BL Henry, Los Angeles Service Unit, for removal of a Level 5 discipline assessment, compensation for all time lost and restoration of vacation credits due to his suspension from service March 3, 2006, and subsequent permanent dismissal from service on April 21, 2006, until he was returned to service on or about July 26, 2006. Claim includes payment for all wage equivalence to which Claimant is entitled, such as medical and dental benefits and for any monetary loss for such coverage while dismissed from service. In addition, we seek three days' pay for attending the investigation held on March 22, March 23 and April 12, 2006."

## FINDINGS:

The First Division of the Adjustment Board, upon the whole record and all the evidence, finds that:

The carrier or carriers and the employee or employees involved in this dispute are respectively carrier and employee within the meaning of the Railway Labor Act, as approved June 21, 1934.

This Division of the Adjustment Board has jurisdiction over the dispute involved herein.

Form 1
Page 2

Award No. 26631
Docket No. 46685
NRAB-00001-070122
(07-1-122)

Parties to said dispute were given due notice of hearing thereon.

On April 21, 2006 the Carrier dismissed the Claimant from its service. As a result of an investigation held on April 12, 2006 the Carrier found the Claimant violated Rule 1.5 on March 2, 2006 by arguing with the Yardmaster.

The Organization argues that the discipline should be removed from the Claimant's personal record and Claimant paid for time lost because the Carrier's Superintendent did not respond to the Local Chairman's appeal in a timely manner.

Also, on the same day that the Carrier dismissed the employee it offered to lower the discipline to a 30 day suspension. The Claimant did not accept the offer.

On June 9, 2006 the Local Chairman appealed the discipline to the Superintendent. On July 26, 2006 the Carrier reinstated the Claimant. However, the Claimant did not waive the right to progress this claim.

The Organization has produced sufficient evidence to show the claim was appealed in a timely manner and that the Carrier's Superintendent never responded to the appeal.

Accordingly, without ruling on the merits of the case, this Board finds the Carrier violated Rule 19, the Time Limit Rule. Therefore, Claimant will be paid for all time lost and the discipline removed from the Claimant's record.

### AWARD

Claim sustained.

### ORDER

This Board, after consideration of the dispute identified above, hereby orders that an award favorable to the Claimant(s) be made. The Carrier is ordered to make the Award effective on or before 30 days following the postmark date the Award is transmitted to the parties.

Form 1
Page 3

Award No. 26631
Docket No.  46685
NRAB-00001-070122
(07-1-122)

NATIONAL RAILROAD ADJUSTMENT BOARD
By Order of First Division

Dated at Chicago, Illinois, this 23rd day of May 2008.

Form 1          NATIONAL RAILROAD ADJUSTMENT BOARD
                              FIRST DIVISION

Award No. 26634
Docket No. 46739
NRAB-00001-070180
(07-1-180)

The First Division consisted of the regular members and in addition Referee Robert Richter when award was rendered.

(United Transportation Union

PARTIES TO DISPUTE: (

(Union Pacific Railroad Company

STATEMENT OF CLAIM:

"A claim and grievance for Union Pacific Railroad employee MA Cervantez, Los Angeles Service Unit, for removal of a Level 5 discipline assessment from his personal record, reinstatement to service with seniority unimpaired, and compensation for all time lost including vacation credits due to his being withheld from service beginning November 8, 2006, and subsequent permanent dismissal from service on December 5, 2006, until he is returned to service. Claim includes payment for all wage equivalence to which Claimant is entitled, such as medical and dental benefits and for any monetary loss for such coverage while suspended and dismissed from service. Additionally, we request payment for one day's pay for Mr. Cervantez'[sic] attendance at the investigation held November 20, 2006."

FINDINGS:

The First Division of the Adjustment Board, upon the whole record and all the evidence, finds that:

The carrier or carriers and the employee or employees involved in this dispute are respectively carrier and employee within the meaning of the Railway Labor Act, as approved June 21, 1934.

Form 1
Page 2

Award No. 26634
Docket No. 46739
NRAB-00001-070180
(07-1-180)

This Division of the Adjustment Board has jurisdiction over the dispute involved herein.

Parties to said dispute were given due notice of hearing thereon.

On December 5, 2006 the Carrier dismissed the Claimant from its service. As a result of an Investigation held on November 20, 2006 the Carrier found the Claimant violated Rule 1.6 (Dishonesty) and Rule 1.26 when the Claimant accepted a gratuity from a customer on November 7, 2006.

The record in this case reveals that the Claimant was working as a brakeman on LO102R-07 on November 7, 2006 at Delores, California. While switching Cal Metals, one of its supervisors asked the crew to move three cars so a contractor could do some work on the industry tracks. The crew complied with the request. As a thank you for doing the work, the Cal Metals supervisor gave the conductor $200. The conductor gave the Claimant $100 for "lunch money". The crew duly noted the work it performed on its work record.

The Carrier's Manager of Yard Operations had a discussion with the Cal Metals supervisor who mentioned the $200 thank you gratuity. The MYO then approached the Claimant and conductor about the $200. After acknowledging the receipt of the money, both employees gave the money to the MYO who returned it to the Cal Metals supervisor.

The Rules the Carrier found the Claimant allegedly violated are as follows:

"1.6    Conduct

Employees must not be:
1.    Careless of the safety of themselves or others
2.    Negligent
3.    Insubordinate
4.    Dishonest
5.    Immoral
6.    Quarrelsome
or

Form 1
Page 3

Award No. 26634
Docket No. 46739
NRAB-00001-070180
(07-1-180)

7.     Discourteous

Any act of hostility, misconduct, or willful disregard or negligence affecting the interests of the Company or its employees is sufficient cause for dismissal and must be reported. Indifference to duty, or to the performance of duty, will not be tolerated.

1.26   Gratuities

Employees must not discriminate among railroad customers. Employees must not accept gifts or rewards from customers, suppliers, or contractors of the railroad unless authorized by the proper authority.

There is not one scintilla of evidence in the record that the Claimant was dishonest. Therefore, the Carrier has not met its burden of proving the Claimant violated Rule 1.4.

The record is also clear that the Conductor, not the Claimant, accepted the money from the Cal Metals supervisor. A close reading of Rule 1.26 shows the MYO could have authorized the gratuity.

The Carrier has not shown that the Claimant violated any of its Rules. Therefore, the Claim will be sustained. The Claimant shall be returned to work with seniority unimpaired and pay for all time lost as a result of the Carrier's actions in this case.

## AWARD

Claim sustained.

Form 1
Page 4

Award No. 26634
Docket No. 46739
NRAB-00001-070180
(07-1-180)

## ORDER

This Board, after consideration of the dispute identified above, hereby orders that an award favorable to the Claimant(s) be made. The Carrier is ordered to make the Award effective on or before 30 days following the postmark date the Award is transmitted to the parties.

NATIONAL RAILROAD ADJUSTMENT BOARD
By Order of First Division

Dated at Chicago, Illinois, this 23rd day of May 2008.